UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GP, minor child by and through her
Mother, JP,

       Plaintiff,

v.                                     Case No:  2:15-cv-728-FtM-38CM

LEE COUNTY SCHOOL BOARD,

       Defendant.
_____/

## **OPINION AND ORDER**[1]

This matter comes before the Court on Lee County School Board's Motion for Partial Summary Judgment (Doc. 71), to which GP, by and through her mother, JP, timely filed a Response in opposition (Doc. 81) and, with the Court's permission, sealed exhibits in support thereof (Docs. 83, 84). The motion is fully briefed and ripe for the Court's review. For the following reasons, the Court grants in part the motion for partial summary judgment.

## **BACKGROUND**

This is a school bullying case. GP, by and through her mother, JP, filed this action on November 23, 2015 against the Lee County School Board (LCSB), Lexington Middle

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

School (LMS), and Linda Caprarotta, the Principal of LMS, pursuant to Florida state laws prohibiting bullying and harassment, as well as federal claims pursuant to Title VI of the Civil Rights Act of 1964, the Individuals with Disability Education Act of 2004, and Section 504 of the Rehabilitation Act of 1973. (Doc. 1). GP filed an amended complaint (Doc. 17), of which only one count survived a motion to dismiss (Docs. 26, 35). GP was permitted to file an amended complaint, which was filed on June 14, 2016 (Doc. 37). She then sought leave to file another amended complaint (Doc. 48), which was denied (Doc. 49). GP's Second Amended Complaint (Doc. 37) was ultimately stricken for failure to comply with Federal Rule of Civil Procedure 15(a) and the Court's prior Order (Doc. 35). (Doc. 62). GP was then permitted one "<u>final opportunity to amend</u>." (Doc. 62 at 2, 3 (emphasis in original)).

GP's "Second Amended Complaint (Revised) and Demand for Jury Trial" (hereinafter "Complaint") (Doc. 63) was filed on January 10, 2017, and LCSB's Answer was filed on January 17, 2017 (Doc. 64). The Complaint alleges race or national origin discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d, *et seq.* (Count One), gender discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (Count Two), and Florida state law claims of negligent infliction of emotional distress (Count Three) and negligent supervision (Count Four). LCSB's motion seeks summary judgment as to the federal claims only, and GP's Response states that she wishes to voluntarily dismiss the Title VI claim (Count One). (Doc. 81 at 1 ("Plaintiff will not move forward on Count One, and voluntarily dismisses it.")). Accordingly, the Court addresses only the Title IX claim.

GP is a female student who attended LMS. Her claims arise out of an incident during which she claims she was bullied by another student while attending LMS, which is part of the LCSB. The gist of her Title IX claim is that the LCSB treated similarly situated male students more favorably, and that, because GP is female, LCSB failed to adequately respond to her complaints of bullying and was deliberately indifferent to her federally protected rights. GP alleges that she suffered physical[2] and emotional damages as a result.

The undisputed facts are these. While in orchestra class on November 22, 2013, GP was hit in the face by a spiral notebook swung by another student, NM, after they had a verbal altercation. NM blocked GP's ingress into the band locker room, which led her to call NM a derogatory name. NM then left, retrieved the notebook, returned to the room, and hit GP in the face. GP and other female students reported the incident to the substitute teacher, and then to LMS Principal Linda Caprarotta. This was the first time that GP reported to anyone at LMS that she was being bullied or harassed by another student, and no one else reported to LMS any instances of bullying or harassment of GP by NM. However, GP alleges that she told her peers about other prior incidents.

After reporting NM's conduct to Caprarotta, GP went home on the school bus on Friday afternoon. No action was taken by LMS personnel until Monday, November 25, 2013, at which time LMS Assistant Principal Jason Peters initiated an investigation into the incident. During Peters' investigation, he and Caprarotta interviewed GP and her

---

[2] Although both GP and JP discuss GP's "HAE", a physical condition from which she suffers that GP alleges was exacerbated or aggravated by the alleged bullying incidents and LCSB's inadequate response, they have not shown how or why this is a factor for consideration in determining whether a Title IX violation occurred, rather than a consideration when determining damages. Accordingly, the Court does not address it.

mother. Peters also interviewed NM, during which NM admitted to striking GP in the face with the notebook but denied any prior instances of bullying. Following the meeting, LMS changed GP's schedule by removing her from the class she shared with NM in an effort to ensure that she would have no further contact with NM. NM was also instructed by Peters that he was not to have any contact with GP. Both GP and NM were told to report any contact with each other to the administration immediately. On November 26, 2013, GP and her mother filed a formal bullying complaint with LMS, alleging that NM had been bullying GP since September 2013.

After the formal complaint was filed, LMS began a bullying investigation. As part of that investigation, school guidance counselor Julie Claprood interviewed twelve students from the class GP and NM shared, including GP. Claprood took written statements from each student during their interview. Ultimately, LMS concluded that "bullying," as that term is defined in the code of conduct, had not occurred, but that GP was the victim of a battery by NM. On December 4, 2013, GP's mother was informed of the investigation's findings and told that NM would be disciplined. NM was suspended from school for two days on December 9, 2013. GP's schedule remained changed such that she no longer had any classes with NM, and the school's instructions to both GP and NM to avoid contact with the other also remained in place. NM never again spoke to GP after they no longer had any classes together.

**LEGAL STANDARD**

Summary judgment is proper "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

4

judgment as a matter of law." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314 (11th Cir. 2011); Fed. R. Civ. P. 56(a), (c).  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The movant bears the burden of showing the absence of dispute as to material facts, and upon such a showing the burden shifts to the non-moving party to establish that a genuine dispute exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The evidence must be viewed in favor of the non-moving party and all inferences drawn in her favor.  *Anderson*, 477 U.S. at 255.

## DISCUSSION

Title IX of the Education Amendments of 1972 prohibits discrimination on the basis of sex.  It provides, in pertinent part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]"  20 U.S.C. § 1681(a).  At the outset, it is not entirely clear whether GP is attempting to show a Title IX violation based solely on LCSB's discriminatory intent via its deliberate indifference, a student-on-student harassment claim, or both.

Discriminatory intent may be shown by establishing deliberate indifference.  *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 347 (11th Cir. 2012).  In Title IX cases, deliberate indifference, and thus discriminatory intent, may be shown by establishing that a recipient of federal funds was actually aware of the discrimination and refused to act on that knowledge.  *Id.*  Where Title IX cases do not involve an official policy of the recipient, damages are available only where "an official who at a minimum has authority to address

5

the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Thus, "[f]or an organization to be liable for Title IX purposes, [Supreme Court precedent] requires the deliberate indifference of 'an *official* who at a minimum has *authority* to address the alleged discrimination and to institute corrective measures on the [organization's] behalf [and who] has *actual knowledge* of the discrimination in the [organization's] programs and fails to adequately respond.'" *Liese*, 701 F.3d at 347 (alterations and emphases in original) (quoting *Gebser*, 524 U.S. at 290).

Although GP argues that LCSB was deliberately indifferent to her right to be free from intentional gender discrimination, this claim fails. GP alleges that LMS personnel made insulting, gender-based comments suggesting that GP provoked the attack by NM because she is female. Specifically, GP alleges that Caprarotta implied that the incident with NM was GP's fault, and that she was subject to inappropriate, gender-based questions, such as whether she had a relationship or romantic interest in NM and whether she thought NM had a romantic interest in her. *See* GP Dep. 20:22-21:24 (Doc. 84-2) (GP's testimony that Caprarotta said the incident with NM was GP's fault for calling NM a name, and Caprarotta allegedly said that GP was "more embarrassed than hurt"); GP Dep. 50:16-51:23 (GP's testimony that she was subject to similar, gender-based questions during her subsequent meeting with guidance counselor Julie Claprood and School Resource Officer Deputy Waits).

According to GP, these questions and LCSB's response as a whole denied her the reasonable and effective response to bullying allegations to which she was entitled. GP

6

alleges that no such comments would have been made to a male student who came forward with similar allegations. *See* Doc. 81 at 15 ("No male student would have been subject to the same standard, namely having his complaint treated with skepticism and indeed the accusation that he 'provoked' the attack because of his appearance as a male."). However, GP offers nothing but bare assertions to support this contention, which is insufficient at summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A) (the party arguing the existence of a genuine issue of material fact must support the assertion with citations to the record); *Celotex*, 477 U.S. at 325 (where moving party demonstrates lack of evidence supporting the non-moving party's case, the non-moving party must come forward with *specific facts* showing a genuine dispute); *Matsushita*, 475 U.S. at 587 (to show genuine issue, non-moving party must provide support by identifying sufficient evidence in the record).

To the extent that GP attempts to allege and show that she was treated less favorably than a similarly situated male student, GP also has not identified a similarly situated male student. GP alleges that RM, a male student, was also bullied by NM and received more favorable treatment by way of a more adequate or thorough response from LCSB. JP testified that she believes RM received more favorable treatment because he was not "interrogated" or accused of lying, Caprarotta did not demand corroboration from other students of RM's allegations as she had done with GP's, RM was not asked personal questions of a romantic nature, and no comments were made about RM's physical appearance. JP Dep. 164:4-18, 175:6-177:13, 191:15-194:23 (Doc. 84-1). However, neither GP nor JP were involved in LCSB's investigation into RM's allegations, and JP admits that their knowledge of the incident involving RM was based solely on what

7

they heard from others. *See* JP Dep. 164:19-23. GP and JP also admit that they never heard anyone associated with LCSB make derogatory comments about females, and further admit that Caprarotta, the person who they claim was deliberately indifferent, is also female. JP Dep. 191:15-192:2; GP Dep. 37:7-12.

There is also an important factual distinction between GP's allegations and those made by RM: RM did not allege that he had been bullied by NM, nor did he allege the existence of any ongoing harassment. The record shows that RM alleged only that NM threatened him as part of a one-time incident. As the result, there was no protection plan requested or put in place, and no modification to RM's school schedule like the modification made to GP's schedule during the pendency of her bullying investigation. However, during the investigation into RM's complaint, LMS personnel interviewed student witnesses to the incident between NM and RM, and ultimately determined that NM was at fault. NM was then suspended from school consistent with the LMS code of conduct. Contrary to GP's allegations, the record shows that NM was not expelled or requested to withdraw; instead, after the incident with RM, NM's parents voluntarily withdrew him from LMS. *See* Berry Aff. ¶ 17 (Doc. 71-2). Because the allegations made by GP and RM, and the resultant investigations, were different, GP has not shown that RM was similarly situated or treated more favorably. Accordingly, there is no evidence of gender-based discriminatory intent.

Title IX claims may also be based on student-on-student harassment, but only "for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633, 643, 650 (1999). To prevail on a Title IX student-on-student

harassment claim, GP must establish the following four elements: (1) that LCSB is a Title IX funding recipient; (2) that an "appropriate person" had actual knowledge of the harassment; (3) that LCSB, as the funding recipient, acted with deliberate indifference to known acts of harassment in its programs or activities; and (4) the harassment was so severe, pervasive, and objectively offensive that it effectively barred GP's access to an educational opportunity or benefit. *Williams v. Bd. of Regents of the Univ. Sys. of Ga.*, 477 F.3d 1282, 1293 (11th Cir. 2007). "An 'appropriate person' . . . is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Gebser*, 524 U.S. at 290. The parties do not dispute that LCSB is a Title IX funding recipient, or that Caprarotta is an "appropriate person." Thus, whether GP can show a violation of Title IX depends on whether LCSB had actual knowledge of the harassment, whether LCSB acted with deliberate indifference, and whether the harassment was sufficiently severe, pervasive, and objectively offensive. GP fails to carry her burden as to each of these elements.

Although GP claims that NM began harassing or bullying her in September 2013, *see* GP Dep. 10:13-12:21, it is undisputed that no one at LMS, and therefore LCSB, had actual notice of any harassment or alleged bullying by NM until November 22, 2013, when GP, accompanied by other female students, went to Caprarotta's office and informed her that NM had just hit GP in the face with a notebook. *See* JP Dep. 17:10-18:6 (JP testifying that although GP told her of the incident with NM on the day it occurred, prior to this incident GP had never discussed any problems she was having with NM with anyone but her peers).

Nor did LCSB exhibit deliberate indifference once it became aware of GP's accusations. "[F]unding recipients are deliberately indifferent 'only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" *Ross v. Corp. of Mercer Univ.*, 506 F. Supp. 2d 1325, 1354 (M.D. Ga. 2007) (quoting *Davis*, 526 U.S. at 648). GP and her parents met with Peters on Monday, November 25, 2013 (GP Depo 33:7-34:1), and he began an investigation that day. During the course of his investigation, he interviewed multiple people, including GP and NM, who admitted to striking GP with the notebook. *See* Doc. 84-3 at 6 (written statement given by GP on November 25, 2013 regarding the events of November 22); *id.* at 7 (GP's completed Bullying Complaint Report Form, dated November 26, 2013). *See also* Doc. 84-1 at 66 (same). Peters, Caprarotta, and Deputy Waits also interviewed GP and her mother together about the incident on multiple occasions. JP Dep. 52:1-53:7, 71:1-15; Berry Aff. ¶ 4. Claprood, the guidance counselor, also interviewed and obtained written statements from GP and other students. *See* Doc. 84-3 at 9-25, 27-34. None of GP's classmates actually witnessed the incident (*see id.*), and none supported GP's allegations of ongoing bullying and harassment prior to the November 22, 2013 incident. JP also admits that she did not know how or to what extent the LCSB actually investigated GP's bullying complaint. JP Dep. 84:21-85:7.

The school's investigation ultimately concluded that no bullying, as that term was specifically defined by the code of conduct, had occurred, but that a battery had. These results were detailed in a letter sent to JP dated December 4, 2013. *See* JP Dep. 93:18-94:7, 94:24-95:2; Doc. 84-1 at 67. The letter also informed JP that she had "a right to appeal" the decision and could "appeal by submitting a written request to [Caprarotta]

within ten school days of the date of [the] letter." *Id*.; JP Dep. 101:25-102:6. JP admits that she did not follow this procedure or file an appeal, instead opting to write a letter to the entire LCSB. *Id*.; JP Dep. 101:5-102:16.

Although the corrective measures taken by LCSB may not have been what GP or her mother had in mind, LCSB did not act with deliberate indifference. Once the complaint came to their attention, multiple school officials met with GP, her parents, NM, and other students whom GP identified as witnesses. When NM admitted to striking GP in the face with the notebook, he was suspended in accordance with the school's code of conduct. GP was removed from the class she shared with NM, and both students were ordered to stay away from the other and to report any contact to school administration. GP admits that after the investigation into her complaints, NM did not repeat any of the behaviors he exhibited prior to November 22, 2013. GP Dep. 45:12-18, 467-47:6. It is also undisputed that NM never spoke to GP again, and both GP and NM voluntarily left LMS shortly after the incident.

Even if these corrective measures had ultimately been ineffective or unsuccessful, that alone would not render LCSB deliberately indifferent. *See Sauls v. Pierce Cnty. Sch. Dist.*, 399 F.3d 1279, 1285 (11th Cir. 2005) ("[A] school district is not deliberately indifferent simply because the measures it takes are ultimately ineffective[.]"). Moreover, the Supreme Court has instructed that "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis*, 526 U.S. at 648. Upon review of the record, LCSB's response to GP's bullying or harassment allegations was not "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.

Thus, even drawing all reasonable inferences in GP's favor, she has not shown a genuine dispute that LCSB acted with deliberate indifference.

Finally, the conduct complained of is not sufficiently severe or pervasive. There is no evidence in the record, other than GP's unsupported allegations, to show that NM had been bullying or harassing her for months prior to the November 22, 2013 incident. Nor is there evidence that bullying or harassing continued after the November incident; rather, the undisputed evidence shows that NM and GP had no further contact. In order "[t]o have a systemic effect of denying the victim equal access to an educational program or activity . . . gender discrimination must be more widespread than a single instance of one-on-one peer harassment." *Williams, 477 F.3d at 1297* (quotation marks omitted). GP has not shown that LCSB's allegedly inadequate response denied her equal access to an educational opportunity or program benefit. Thus, even if LSCB's response to GP's bullying allegations could be said to be deliberately indifferent, GP's Title IX claim would nevertheless fail on this element.

Accordingly, it is now

**ORDERED:**

1. GP's request to voluntarily dismiss the Title VI claim (Count One) (Doc. 81 at 1) is **GRANTED**. Count One is **DISMISSED with prejudice**.

2. Lee County School Board's Motion for Partial Summary Judgment (Doc. 71) is **GRANTED** as to the Title IX claim (Count Two) and **MOOT** as to the Title VI claim (Count One).

3. The Court declines to exercise its supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining Florida state law claims. Accordingly, Counts Three and Four are **DISMISSED without prejudice**.

4. The Clerk is directed to terminate any pending motions and deadlines, enter judgment accordingly, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 19th day of September, 2017.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record